.UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MICHAEL D,[1]                         :    Case No.  2:25-cv-00257
                                      :
        Plaintiff,                    :    Magistrate Judge Peter B. Silvain, Jr.
                                      :    (by full consent of the parties)
vs.                                   :
                                      :
COMMISSIONER OF THE SOCIAL            :
SECURITY ADMINISTRATION,              :
                                      :
        Defendant.                    :

DECISION AND ENTRY

Plaintiff Michael D. brings this case challenging the Social Security Administration's

denial of his application for a period of disability and Disability Insurance Benefits (DIB).  The

case is before the Court upon Plaintiff's Statement of Errors (Doc. #8), the Commissioner's

Memorandum in Opposition (Doc. #9), Plaintiff's Reply (Doc. #10), and the administrative record

(Doc. #7).

I.      **Background**

The Social Security Administration provides DIB to individuals who are under a

"disability," among other eligibility requirements.  *Bowen v. City of New York*, 476 U.S. 467, 470

(1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a).  The term "disability" encompasses "any medically

determinable physical or mental impairment" that precludes an applicant from performing

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials. *See also* S.D. Ohio General Rule 22-01.

"substantial gainful activity." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

In the present case, Plaintiff protectively applied for benefits on January 10, 2022, alleging disability due to several impairments, including a "Bad back," "Diabetes," "PTSD," "high blood pressure," and "torn rotator cuff." (Doc. #7-6, *PageID* #291).  After his application was initially denied, and upon reconsideration, Plaintiff requested and received a hearing before Administrative Law Judge (ALJ) Noceeba Southern on November 29, 2023.  (Doc. #7-3, *PageID #s* 63–88). Thereafter, the ALJ issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations.  *See* 20 C.F.R. § 404.1520.  She reached the following main conclusions:

Step 1:  Plaintiff has not engaged in substantial gainful activity since March 5, 2020, the alleged onset date.

Step 2:  He has the following severe impairments: degenerative disc disease of the cervical and thoracic spine; left rotator cuff tear; diabetes; hypertension; obesity; anxiety; and post-traumatic stress disorder.

Step 3:  He does not have an impairment or combination of impairments that meets or medically equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4:  His residual functional capacity (RFC), or the most he could do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of the ability "to perform light work as defined in 20 CFR 404.1567(b) except occasional ramps or stairs; avoiding ladders, ropes, or scaffolds; frequent balancing; occasional stooping, kneeling, crouching, and crawling; and frequent reaching in all directions with the left upper extremity. Mentally, [Plaintiff] can tolerate simple routine tasks that do not require fast pace assembly work or strict hourly production quotas, and should be able to tolerate a position that does not require more

2

than occasional but superficial interactions with coworkers and supervisors (superficial being that which is beyond the performance of job duties and job functions for a specific purpose and a short duration). [Plaintiff] can also tolerate a position that has few detailed instructions, occasional changes and occasional decision making in a static work environment. He should also avoid tandem work, interaction with the public, and positions that require over-the-shoulder supervision or managerial, conflict resolution, problem solving, and mediation skills. Additionally, [Plaintiff] will be off task less than 10% of the workday, exclusive of normal breaks and lunches."

Plaintiff is unable to perform his past relevant work.

Step 5:    Considering his age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

(Doc. #7-2, *PageID* #s 41–58).  Based on these findings, the ALJ concluded that Plaintiff has not been under a benefits-qualifying disability from March 5, 2020, through the date of the decision of January 4, 2024.  *Id.* at 58.

The evidence of record is adequately summarized in the ALJ's decision (Doc. #7-2, *PageID* #s 39–58), Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #9), and Plaintiff's Reply (Doc. #10). To the extent that additional facts are relevant, they will be summarized in the discussion section below.

## II.    **Standard of Review**

Judicial review of an ALJ's decision is limited to whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745–46 (6th Cir. 2007). Substantial

evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007)).  It is "less than a preponderance but more than a scintilla." *Id.*

In reviewing the ALJ's legal analysis, a second judicial inquiry may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546–47 (6th Cir. 2004)).

## III.    <u>Discussion</u>

In his Statement of Errors, Plaintiff avers that the ALJ failed to properly evaluate the prior administrative medical findings and the medical opinions. (Doc. #8, *PageID* #s 813–28). The Commissioner contends the ALJ properly evaluated the prior administrative medical findings and medical opinions. (Doc. #9, *PageID* #834).

A plaintiff's RFC is an assessment of "the most [a plaintiff] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1) (2012). A plaintiff's RFC assessment must be based on all the relevant evidence in his case file. *Id.* The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20

C.F.R. § 404.1513(a)(1)–(5). Regarding two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [Plaintiff]'s medical sources." 20 C.F.R. § 404.1520c(a). Instead, an ALJ must consider five factors when reviewing medical opinions and administrative findings: (1) supportability, (2) consistency, (3) the relationship with Plaintiff, (4) specialization, and (5) other various factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability programs policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c)(1)–(5).

Supportability and consistency are the most important of the five factors. 20 C.F.R. § 404.1520c(b)(2). While the regulations state that ALJs "*may . . .* explain how [they] considered" the other various factors, these same regulations mandate that an ALJ "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings." 20 C.F.R. § 404.1520c(b)(2) (emphasis added). Supportability "concerns an opinion's reference to diagnostic techniques, data collection procedures/analysis, and other objective medical evidence." *Kenneth M. v. Comm'r of Soc. Sec.*, 2025 WL 1948987, at *12 (S.D. Ohio July 16, 2025) (Preston Deavers, M.J.), quoting *Reuse v. Comm'r of Soc. Sec.*, 2021 WL 1697919, at *7 (N.D. Ohio Apr. 29, 2021) (internal citations omitted). When evaluating supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 404.1520c(c)(1). When

evaluating consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 404.1520c(c)(2). Failing to discuss either supportability or consistency requires remand. *Kenneth M.*, 2025 WL 1948987, at *12; *Whalen v. Comm'r of Soc. Sec.*, 2025 WL 1452713, at *17 (N.D. Ohio May 21, 2025), *report and recommendation adopted*, No. 1:24-CV-1928, 2025 WL 1756524 (N.D. Ohio June 25, 2025) ("An ALJ may discuss one adequately but not the other, thus requiring remand.").

An ALJ must "provide a coherent explanation of [her] reasoning." *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 5:20CV1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021), and "set forth a 'minimum level of articulation' to be provided in determinations and decisions, in order to 'provide sufficient rationale for a reviewing adjudicator or court.'" *Warren I. v. Comm'r of Soc. Sec.*, 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 Fed. Reg. 5844-01, 5858 (January 18, 2017)); *Decorian P.R. v. Comm'r of Soc. Sec. Admin.*, 2024 WL 1155941, at *5 (S.D. Ohio Mar. 18, 2024) (internal citation omitted). An "ALJ's failure to meet these minimum levels of articulation frustrates [the] court's ability to determine whether [the plaintiff's] disability determination was supported by substantial evidence." *Warren I.*, 2021 WL 860506, at *8. The ALJ bears the burden of "show[ing] his or her work"; in other words, the ALJ must "explain in detail *how the factors actually were applied* in each case, to each medical source." *Kenneth M.*, 2025 WL 1948987, at *12 (citing *Hardy v. Comm'r of Soc. Sec.*, 554 F.Supp. 3d 900,

6

at *6 (E.D. Mich. 2021)); *Dayna S. v. Comm'r of Soc. Sec.*, 3:21-CV-00326, 2023 WL 1009135, at *5 (S.D. Ohio Feb. 15, 2023) (Gentry, M.J.) (internal citations omitted).

### A.  State Agency Medical Consultant Dr. Siddiqui

Plaintiff argues that the ALJ failed to evaluate prior administrative medical findings and medical opinions pursuant to the two most important factors: supportability and consistency. (Doc. #10, *PageID* #851). State agency medical consultant Mehr Siddiqui, M.D., reviewed Plaintiff's medical evidence at the initial level on March 15, 2022. (Doc. #7-3, *PageID* #s 90–98). He opined that Plaintiff was limited to light exertion level with frequent balancing; occasional climbing ramps and stairs, stooping, kneeling, crouching, and crawling; and never climbing ladders, ropes, or scaffolds. *Id.* at 94–95. At the reconsideration level, state agency medical consultant Leslie Green, M.D., also reviewed Plaintiff's record on July 10, 2022, affirming Dr. Siddiqui's assessment. *Id.* at 101–10.

According to Plaintiff, the ALJ "merely stat[es] that she 'cannot defer or give any specific evidentiary weight, including controlling weight, to any prior administrative findings or medical opinions . . ." *Id.* (quoting Doc. #7-2, *PageID* #52).

Contrary to Plaintiff's assertion, the ALJ discussed the persuasiveness of Dr. Siddiqui's, as well as Dr. Green's, opinions, stating:

> Although neither examining nor treating physicians, these experts are medical doctors with knowledge of SSA's rules, regulations, and the evidentiary requirements used in the adjudication of disability claims. The [ALJ] finds these prior administrative medical findings persuasive, and has incorporated them in the physical residual functional capacity above. However, additional medical evidence received in the course of developing [Plaintiff]'s case for review at the administrative hearing level regarding [Plaintiff]'s left upper extremity, as well as evidence in the form of persuasive testimony from [Plaintiff] at the hearing,

> consistent with medical evidence in the record, justifies the additional limitation to frequent reaching in all directions with the left upper extremity

(Doc. #7-2, *PageID* #53).

As stated above, when evaluating supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the ALJ should find the medical opinion; here, ALJ Southern found that Dr. Siddiqui's findings are only somewhat supported by a body of evidence that fails to include "additional medical evidence received in the course of developing [Plaintiff]'s case for review at the administrative hearing level," which resulted in the ALJ finding that "the additional limitation to frequent reaching in all directions with the left upper extremity" was necessary and appropriate. *Id.* Thus, although the ALJ did not specifically use the term "supportability," she adequately considered it when assessing Dr. Siddiqui's and Dr. Green's opinions. *See Sasha M. v. Comm'r*, No. 2:22-cv-2101, 2023 WL 1793536, at *6 (S.D. Ohio Feb. 7, 2023) (Jolson, M.J.) ("While the ALJ did not use the 'magic words' supportability and consistency, her line of reasoning addressed both.")).

### B.  State Agency Psychologists Dr. Yapondjian-Alvarado and Dr. Johnston

Plaintiff also argues that the ALJ did not assess the supportability factor when evaluating Dr. Yapondjian-Alvarado and Dr. Johnston's opinions, necessitating a remand. (Doc. #8, *PageID* # 817–24). State agency psychologist Maria Yapondjian-Alvarado, Psy.D., reviewed Plaintiff's records on May 11, 2022. (Doc. #7-3, *PageID* #s 90–97). Dr. Yapondjian-Alvarado found that Plaintiff's abilities to interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself were moderately limited. *Id.* at 92. Dr. Yapondjian-Alvarado opined that Plaintiff

8

would be able to sustain concentration and persistence to complete simple routine tasks and was

capable of superficial social interactions and work that does not have strict production standards.

*Id.* at 95–96. State agency psychologist, Irma Johnston, Psy.D., reviewed Plaintiff's file upon

reconsideration on June 24, 2022, and she affirmed Dr. Yapondjian-Alvarado's assessment, adding

that Plaintiff would be able to sustain concentration and persistence to complete simple routine

tasks in a setting without a fast pace. *Id.* at 107–08.

Regarding Dr. Yapondjian-Alvarado and Dr. Johnston's prior administrative medical

findings, the ALJ likewise found them to be "persuasive," explaining:

> The [ALJ] agrees that [Plaintiff] has no more than moderate limitations, with no more than mild limitations in understanding, remembering, and applying information. Moreover, the [ALJ] finds these prior administrative medical findings persuasive to the extent the limitations assessed are supported by the evidentiary record at the initial and reconsideration levels. However, additional medical evidence received in the course of developing [Plaintiff]'s case for review at the administrative hearing level, as well as evidence in the form of persuasive testimony from [Plaintiff] at the hearing, consistent with medical evidence in the record, justifies a conclusion that [Plaintiff]'s mental impairments are more limiting than was concluded by the state agency reviewing psychological consultants (SSR 17-2p). Given the totality of the evidentiary record, the [ALJ] finds [Plaintiff] is most appropriately limited to no more than occasional, superficial interactions with coworkers and supervisors. Moreover, [Plaintiff]'s behavioral issues reasonably limit him to no interaction with the public and precludes positions that involve tandem work, over-the-shoulder supervision, managerial, conflict resolution, problem solving, or mediation skills. Additionally, [Plaintiff]'s behavioral issues reasonably limits [Plaintiff] to positions that have few detailed instructions and only occasional changes and occasional decision making in a static work environment. Further, the evidentiary record, including [Plaintiff]'s testimony at the hearing, supports the conclusion he will be off task less than 10% of the workday, exclusive of normal breaks and lunches. These functional limitations are consistent with the overall evidence, showing some deficits, but generally normal mental status examinations and stability with treatment.

(Doc. #7-2, *PageID* #s 53–54).

Again, ALJ Southern's findings address supportability and consistency without using specific terminology, which is appropriate. *Timothy B. v. Comm'r of Soc. Sec.*, No. 2:22-CV-03834, 2023 WL 3764304, at *7 (S.D. Ohio June 1, 2023) (Bowman, M.J.) (citing *Sasha M.*, 2023 WL 1793536, at *6). In assessing supportability, the ALJ found that Dr. Yapondjian-Alvarado's opinion was, for the most part, supported by relevant objective medical evidence and supporting explanations "persuasive to the extent the limitations assessed are supported by the evidentiary record at the initial and reconsideration levels." (Doc. #7-2, *PageID* #s 53–54). More simply, the objective medical evidence and explanations Dr. Yapondjian-Alvarado presented to support her medical opinion were persuasive regarding the limitations that were assessed. *Id.* However, Dr. Yapondjian-Alvarado's opinion was only somewhat supported by a body of objective medical evidence "received in the course of developing [Plaintiff]'s case for review at the administrative hearing level." *Id.* Because of this additional evidence, as well as the persuasive testimony from Plaintiff during the hearing, the ALJ adopted the findings that were sufficiently supported and consistent but made findings regarding functional limitations that were more consistent with the overall evidence. *Id.*

Thus, the ALJ adequately considered the supportability and consistency of Dr. Yapondjian-Alvarado and Dr. Johnston's opinions.

### C. Psychological Examiner Dr. Dubey

Next, Plaintiff alleges that the ALJ erred in finding the consultative psychological examiner Sudhir Dubey, Psy.D.'s opinion persuasive without accommodating his findings—or at least explaining why they were not adopted. (Doc. #8, *PageID* #825–26).

Dr. Dubey examined Plaintiff on April 25, 2022. (Doc. #7-7, *PageID* #s 541–47). On mental status examination, Dr. Dubey noted that Plaintiff did not appear confused or exhibit a lack of awareness. *Id.* He found Plaintiff's recent and remote memory unremarkable. *Id.* Plaintiff's hygiene was unremarkable; he was dressed appropriately; he did not evidence any unusual gestures, mannerisms, or motor activity; his eye contact was appropriate; his posture was unremarkable; his gait was unremarkable; he was generally calm and stable; his speech was coherent and unremarkable; his thought process was logical; he did not need directions explained; he was fully alert; he exhibited alert and responsive behavior; he did not exhibit attention problems; he did not need simple directions or questions repeated overall; and he did not need multi-step directions or questions repeated overall. *Id.* at 543–44. Dr. Dubey opined that Plaintiff is able to maintain persistence and pace to remember and carry out simple tasks on his own and remember and carry out multi-step tasks with supervision, due to his mood-related issues. *Id.* Dr. Dubey further indicated that Plaintiff's mood-related issues would result in difficulties in his ability to deal with work supervision or coworkers and create some frustration for him, coworkers, and supervisors. *Id.* Dr. Dubey concluded that Plaintiff's mood-related issues would result in many difficulties in his ability to deal with work under pressure and might create moderate frustration for him, coworkers, and supervisors. *Id.* at 545–47.

The ALJ found Dr. Dubey's opinion persuasive "to the extent it is not inconsistent with" the established mental RFC. (Doc. #7-2, *PageID* #54). Regarding Plaintiff's general contention that the ALJ failed to evaluate Dr. Dubey's findings on the basis of supportability and consistency, the undersigned finds that not to be the case. The ALJ expressly noted that Dr. Dubey "had the

11

opportunity to observe, interview[,] and objectively evaluate the claimant before offering an opin[i]on consistent with his observations and findings." *Id.* In noting Dr. Dubey's "diagnostic techniques, data collection procedures/analysis, and other objective medical evidence," *Reusel v. Comm'r of Soc. Sec.*, 2021 WL 1697919, at *7 (N.D. Ohio Apr. 29, 2021) (Parker, M.J.) (citing 20 C.F.R. § 404.1527(c)(3)), the ALJ's analysis goes directly to supportability. *See Molly H. v. Comm'r of Soc. Sec.*, 2025 WL 2630681, at *17–18 (S.D. Ohio Sept. 12, 2025) (Gentry, M.J.) (finding that "an ALJ's supportability analysis addresses whether a medical professional has sufficient justification for their *own* conclusions.") (referencing *Crystal E.J. v. Comm'r of Soc. Sec.*, 2022 WL 2680069 (S.D. Ohio July 12, 2022) (Preston Deavers, M.J.)). Additionally, ALJ Southern expressly contemplated consistency, concluding that Dr. Dubey's findings were persuasive only to the extent that they were not inconsistent with the established mental RFC. (Doc. #7-2, *PageID* #54).

Moreover, ALJ Southern is not required to incorporate Dr. Dubey's findings verbatim. When finding Dr. Dubey's opinions somewhat persuasive, she is permitted to incorporate some or all of his findings. However, she must either incorporate the opined limitations or provide an explanation for declining to do so. The ALJ has done so here. *Id.* ALJ Southern accounted for each of Dr. Dubey's findings and limited their incorporation only in regard to the ways that they may or may not contradict or raise inconsistencies with the established RFC. *Id.* The ALJ especially considered Dr. Dubey's failure to "appreciate any confusion or lack of awareness by the claimant" as well as his medical opinion noting that "[Plaintiff's] recent and remote memory [was] unremarkable." *Id.* (citing Doc. #7-2, *PageID* #52).

Therefore, the ALJ adequately considered Dr. Dubey's opinion.

### D. Treating Sources Chiles and Hite

Additionally, Plaintiff asserts that the ALJ improperly "discounted" the opinions of treating source examiners Amanda Chiles, M.S. Ed., LPC, and Dave Hite, LPCC-S. (Doc. #8, *PageID* #s 826–27). Specifically, Plaintiff indicates the reason for discounting their opinions was that they "did not have access to all of the medical evidence that is currently in the record[,]" and Plaintiff argues that the ALJ "disingenuously" found the opinions of state agency reviewers persuasive "despite that they did not have access to even <u>more</u> of the 'current' medical record . . . ." *Id.* (quoting Doc. #7-2, *PageID* #53).

Plaintiff's treating counselors, Chiles and Hite, completed medical source statements in May 2023. (Doc. #7-7, *PageID* #s 708–10, 711). They concluded that Plaintiff had difficulty maintaining regular employment, maintaining friendships, coping with change, and enjoying leisure time. (Doc. #7-2, *PageID* #54). They also noted Plaintiff's symptoms have had a significant impact on his relationships, work, and home life. *Id.* They opined that Plaintiff "had mild, moderate, marked[,] and extreme difficulty in his ability to understand, remember, and apply information; mild, marked, and extreme limitations in his ability to concentrate, persist, or maintain pace; and moderate, marked, and extreme limitations in his ability to adapt or manage himself." *Id.* Plaintiff was found to have extreme limitations in his ability to relate to and work with supervisors, coworkers, and the public; extreme limitations in his overall ability to regulate his emotions, control his behavior, and maintain his well-being in a work setting; moderate limitations in his overall ability to focus attention on work activities and to stay on task at a

13

sustained rate; and mild limitations in his overall ability to learn, recall, or use information to perform work activities. *Id.* Additionally, they opined that Plaintiff would not be able to perform regular, full-time, competitive work on a sustained basis without missing work three or more times per month, being off task more than 15% to 20% of the workday; or needing additional breaks due to his impairments, medical appointments, and/or treatment. *Id.*

Chiles and Hite also completed a follow-up narrative opinion on October 3, 2023, indicating that Plaintiff struggled with physiological distress when recalling traumatic events, irritable moods, angry outbursts, intrusive thoughts, recurring nightmares, avoidance, and feelings of detachment from others. (Doc. #7-8, *PageID* #797). They also noted that Plaintiff's "generalized anxiety disorder and posttraumatic stress disorder related symptoms markedly hindered his daily life, interpersonal relationships, work stability, and sustaining connections with peers in the workplace persistently impacted various aspects of his life, from his personal relationships as well as his professional and home environments." (Doc. #s 7-2, 7-8; *PageID* #s 55, 797).

Regarding Plaintiff's treating counselors, Chiles and Hite, the ALJ found these opinions "somewhat persuasive," noting that Chiles and Hite have treated Plaintiff more than 150 times since January 1, 2019. (Doc. #7-2, *PageID* #55). The ALJ found that Chiles and Hite have a "longitudinal perspective" of Plaintiff's conditions, symptoms, and associated limitations. *Id.* The ALJ also found these opinions persuasive to the extent they found Plaintiff had mild-to-moderate mental limitations. *Id.* However, the ALJ found that the totality of the medical evidence clearly supports that Plaintiff is not as limited as assessed by these treatment providers. *Id.* Moreover, the ALJ discounted the persuasiveness of these opinions because Chiles and Hite did not have access

14

to all of the medical evidence that is currently in the record that contradicts their conclusions regarding marked and extreme functional limitations, which is a consistent concern the ALJ mentions throughout her findings and across the various medical providers. *Id.*

ALJ Southern's treatment of Chiles' and Hite's opinions, especially when discussing their prolonged treatment of Plaintiff and "longitudinal perspective" of his condition, is appropriate. The ALJ also considered the source of the information that the treating examiners used while forming their opinions, stating that "the remaining limitations appear to be highly dependent upon [Plaintiff]'s subjective reports of symptoms and limitations rather than their personal observations and objective findings." *Id.* Earlier in this section, the ALJ found Plaintiff was not wholly persuasive as a reporter of his own symptoms and limitations. *Id.* at 53. Additionally, the ALJ's analysis of the treating source examiners' opinion given the totality of the record touches on consistency.

Therefore, the ALJ adequately considered the opinions of treating source examiners Chiles and Hite.

### E. Consultative Physical Examiner Dr. Fikes

Plaintiff asserts that the ALJ committed the same errors in her evaluation of the opinion of consultative physical examiner Richard Fikes, D.O. as she did when "discounting" the opinions of Chiles and Hite. (Doc. #8, *PageID* #826–27). Consulting physician Fikes examined Plaintiff on February 10, 2022. (Doc. #7-7, *PageID* #s 510–18). Plaintiff reported he experienced chronic cervical, thoracic, and lumbar pain. *Id.* at 510. Plaintiff indicated he had participated in physical therapy for his back and neck pain in the past, but he had not undergone any steroid injections,

15

been referred to an orthopedic or neurologic specialist for further evaluation, or required surgical intervention for his back and neck. *Id.* He also noted participating in physical and occupational therapy for his past rotator cuff injury. *Id.* Plaintiff was able to tend to his own personal activities of daily living, drive, navigate stairs without any assistive devices, and do some light household chores despite his pain. *Id.*

Dr. Fikes noted that, on examination, Plaintiff ambulated with a wide stance, and his gait was within normal limits and without any ataxia. *Id.* While there was tenderness with palpation of the cervical and thoracic spine, his straight leg raise results were negative. *Id.* Further, although range of motion with forward flexion of the lumbar spine was 110, which is outside the normal range of 0–90 degrees, the range of motion of the lumbar spine was otherwise within normal limits in all areas assessed. *Id.* Range of motion in the cervical spine was within normal limits in all areas assessed. *Id.* Moreover, range of motion in the bilateral upper and lower extremities was within normal limits, and there was no evidence of focal joint swelling, erythema, edema, or synovitis in all areas assessed. *Id.* Additionally, cranial nerves were grossly intact, muscle strength was normal in his bilateral upper and lower extremities, and there was no hyperreflexia, pronator drift, or cerebellar dysfunction appreciated. *Id.* Grip strength was also within normal limits bilaterally. *Id.* at 514–18. Imaging of his lumbar spine, taken as part of this evaluation, revealed "mild degenerative and bony spondylotic changes without acute compression fracture." (Doc. #s 7-2, 7-7; *PageID* #s 49; 513). Additionally, imaging of his left shoulder revealed minimal degenerative changes without acute fracture or dislocation. (Doc. #7-7, *PageID* #513).

Dr. Fikes reported there was no clear indication as to any kind of deformity or issue that would prevent Plaintiff from standing for more than 30 minutes. *Id.* He also noted there was no clear evidence of any deformity or radiculopathy that would preclude Plaintiff from walking only about 100–200 feet or limit him to lifting objects that were not of any significant weight. *Id.* Nonetheless, Dr. Fikes opined that, based on his subjective complaints and self-reported limitations, Plaintiff could perform a sedentary to less-than-sedentary level of work. *Id.* at 512.

The ALJ found Dr. Fikes's opinion "not persuasive," noting that even though Dr. Fikes had the opportunity to observe, interview, and objectively examine Plaintiff, "the totality of the medical evidence clearly supports that [Plaintiff] is not as limited as assessed by this doctor," which goes directly to consistency. (Doc. #7-2, *PageID* #53). The ALJ continued that Dr. Fikes specifically noted his opinion was "based solely on [Plaintiff]'s subjective complaints and self-reported limitations during the examination," which goes directly to supportability. *Id.* The ALJ determined that given the evidentiary record at the administrative hearing level, Plaintiff is "not wholly reliable as a reporter of symptoms and limitations." *Id.* The ALJ also found that Dr. Fikes did not have access to all of the medical evidence that is currently in the record that contradicts the limitation to sedentary work. *Id.* Although Plaintiff argues that the ALJ improperly discredited Dr. Fikes's opinion on this basis, the ALJ similarly noted that the state agency reviewers did not review more recent medical records and added further limitations to Plaintiff's RFC to account for those records. The ALJ's findings clearly contemplate the necessary factors of supportability and consistency. Additionally, ALJ Southern clearly indicates her reasoned evaluation of the persuasiveness of Dr. Fikes's opinion.

Therefore, the ALJ adequately considered Dr. Fikes' opinion.

**F.  Disability Placard**

Finally, Plaintiff argues that the ALJ, while acknowledging his "ongoing prescription of a disability placard," found the placard was not persuasive for improper reasons—namely, that "the question of disability is a matter reserved for the Commissioner and the prescription does not support any specific functional limitations that would warrant a more restrictive residual function capacity than found in this section." (Doc. #8, *PageID* #828) (quoting Doc. #7-2, *PageID* #56) (internal quotations omitted).

However, Plaintiff's argument is unpersuasive because the ALJ is correct. *See* 20 C.F.R. § 404.1520b(c) ("Statements on issues reserved to the Commissioner" constitute "[e]vidence that is inherently neither valuable nor persuasive"); *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 492–93 (6th Cir. 2010). Therefore, because the ALJ properly indicated that the Commissioner has the authority to determine the question of disability, this argument is not well taken. Even if the ALJ's assertion was unfounded, the ALJ properly examined the handicap placard under the factors of supportability and consistency. *Kowalske v. Comm'r of Soc. Sec.*, 2022 WL 17494755, at *13–15 (E.D. Mich. Oct. 19, 2022). The ALJ determined that "the standards for prescribing handicap placards do not mirror the standards for disability under Social Security regulations," which directly accounts for supportability. (Doc. #7-2, *PageID* #56). Regarding consistency, the ALJ found that "even if such placard was prescribed by a treating physician, it is inconsistent with the claimant's substantial activities of daily living." *Id.* "No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe

that remand might lead to a different result." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507–08 (6th Cir. 2006) (quoting *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989).

Thus, the ALJ adequately considered Plaintiff's ongoing prescription of a disability placard.

### G. Conclusion

In each of the above instances at issue, ALJ Southern sets forth, at least, a "minimum level of articulation" as to how she considered the supportability and consistency factors for a medical source's opinion. *Warren*, 2021 WL 860506, at *8. While she did not use the "magic words" of "supportability" or "consistency" when assessing each opinion, she is not required to. *Timothy B.*, 2023 WL 3764304, at *7 (citing *Sasha M.*, 2023 WL 1793536, at *6).

Furthermore, an ALJ is not required to adopt a medical opinion verbatim. *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015); *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) ("Although the ALJ may not substitute [her] opinion for that of a physician, [she] is not required to recite the medical opinion of a physician verbatim in [her] residual functional capacity finding."); *Mabry-Schlicher v. Comm'r of Soc. Sec.*, 2025 WL 1604376, at *5 (6th Cir. 2025). When the ALJ finds a physician's opinion to be "somewhat persuasive" and indicates that she has adopted the physician's opinions, she must either incorporate the opined limitations or provide an explanation for declining to do so. *Wood v. Comm'r of Soc. Sec.*, No. 3:18-CV-76, 2019 WL 1614591, at *3 (S.D. Ohio Apr. 16, 2019), *report and recommendation adopted*, No. 3:18-CV-76, 2019 WL 1958663 (S.D. Ohio May 2, 2019) ("[T]he ALJ must meaningfully explain why certain limitations are not included in the RFC

determination, especially when, as here, such limitations are set forth in an opinion the ALJ weighs favorably."); *Cooper v. Comm'r of Soc. Sec.*, No. 2:18-CV-67, 2018 WL 6287996, at *5 (S.D. Ohio Dec. 3, 2018), *report and recommendation adopted*, No. 2:18-CV-67, 2019 WL 95496 (S.D. Ohio Jan. 3, 2019) (citing *Queen v. Comm'r of Soc. Sec.*, No. 2:16-cv-1082, 2017 WL 6523296, at *9–10 (S.D. Ohio Dec. 21, 2017) (remanding where the ALJ "failed to include at least one limitation" from an opinion he had assigned great weight without explaining the omission)). As discussed above, ALJ Southern has done so in the instant matter.

In sum, "It is the ALJ's duty, not the Court's, to resolve conflicts in the medical evidence, and the Court must uphold the ALJ's decision if it is supported by substantial evidence, even when there is substantial evidence to support the opposite conclusion or a reviewing court would resolve the issues of fact differently." *See Sandra B. v. Comm'r of Soc. Sec.*, No. 1:20-CV-960, 2022 WL 444724, at *8 (S.D. Ohio February 14, 2022) (Litkovitz, M.J.) (citing *Luukkonen v. Comm'r of Soc. Sec.*, 653 F. App'x 393, 398 (6th Cir. 2016)). Here, substantial evidence supported the ALJ's resolution of the conflict in the medical opinions. *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) ("When viewed as a whole, however, the ALJ's decision shows that she indeed weighed all of the mental-health opinions presented to her ... the ALJ's opinion on a whole was consistent with the regulations.").

Accordingly, for the above reasons, Plaintiff's Statement of Errors is not well taken.

**IT IS THEREFORE ORDERED THAT**:

1. Plaintiff's Statement of Errors (Doc. #8) is **OVERRULED;**

2. The Commissioner's non-disability finding is **AFFIRMED**; and

20

3. The case is terminated on the Court's docket.


March 30, 2026                                    *s/ Peter B. Silvain, Jr.*
                                                 Peter B. Silvain, Jr.
                                                 United States Magistrate Judge